IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GEORGE BLANKENSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01012-STA-tmp |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)**

Plaintiff Michael George Blankenship filed this action to obtain judicial review of Defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on September 6, 2012. On September 28, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** for additional testimony pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the

1

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[8]

Pursuant to sentence four, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."[9] "A judicial award of benefits is proper only [when] the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."[10] These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on March 31, 1957, and was fifty years old on his alleged disability onset date, which is defined, for purposes of vocational analysis, as an individual closely approaching advanced.[11] He has a high school education. Plaintiff alleges disability due to diabetes, neuropathy, and arthritis[12] with an amended alleged onset date of December 1, 2007.[13]

---

[8] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

[9] *Id.* at 176 (citations omitted).

[10] *Id.*

[11] (R. 51.) No electronic copy of the record has been filed in this matter. *See* Staff Notes dated April 4, 2014.

[12] (*Id.* at 82.)

[13] (*Id.* at 11.)

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2007; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has severe impairments of diabetes mellitus with neuropathy, but he does not have an impairment or combination of impairments that met or equaled a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 through his date last insured; (4) Plaintiff retained the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), except lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking (with normal breaks) about six hours in an eight-hour workday, sitting (with normal breaks) about six hours in an eight-hour workday, pushing and/or pulling unlimited other than as shown for lifting and/or carrying, frequently climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to extreme cold and extreme heat; (5) Plaintiff can perform his past relevant work as an assembler, motor vehicle (automotive manufacturing); (6) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[14]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[15] The claimant bears the ultimate burden of establishing an entitlement to benefits.[16] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to

---

[14] (*Id.* at 13 - 20.)

[15] 42 U.S.C. § 423(d)(1).

[16] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

demonstrate the existence of available employment compatible with the claimant's disability and background.[17]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[18]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[19] Here, the sequential analysis proceeded to the fourth and fifth steps. The ALJ found that Plaintiff could perform his past relevant work and that there was other work that exists in substantial numbers in the national economy that he could perform. The Commissioner argues that, even if the ALJ's step four finding that Plaintiff could perform his past relevant work was in error, the ALJ correctly found that Plaintiff could perform other work at step five of the sequential process.

---

[17] *Id.*

[18] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[19] 20 C.F.R. § 404.1520(a).

Plaintiff contends that the ALJ erred by (1) relying on and giving great weight to a consultative psychological examination report that was unsigned and unauthenticated; (2) failing to obtain testimony from a vocational expert regarding his findings at step four and step five of the sequential evaluation; and (3) not properly assessing Plaintiff's credibility.  Plaintiff also complains that the ALJ's decision was not signed by the ALJ who presided over the hearing and was not properly authenticated.

Looking at Plaintiff's last argument first, the Court finds it to be without merit.  While Plaintiff is correct that the hearing decision was signed by an ALJ (William R. Ingram) other than the one who presided over the hearing (Paul Michael Stimson) and there is nothing in the record indicating that Judge Stimson had approved this decision and given signatory authority to Judge Ingram, as required by HALLEX I-2-8-40, this procedural error does not require reversal. As explained in *Estep v. Astrue*,

> Section I–2–8–40 of the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") provides procedures for situations in which the ALJ who conducted the hearing is unavailable to issue the decision.  In a scenario where the ALJ who conducted the hearing is unavailable to issue the decision due to death, retirement, resignation, prolonged illness or other causes resulting in prolonged leave, the Hearing Office Chief ALJ ("HOCALJ") will reassign the case to another ALJ. *See* HALLEX § I–2–8–40. The incoming ALJ is given discretion to determine whether a new hearing is necessary … *Id.* Section I–2–8–40 also provides procedures for a second scenario in which "an ALJ has approved a final decision but is unavailable to sign the final decision."  In that case, the HOCALJ has authority to sign the final decision on behalf of the temporarily unavailable ALJ with prior written authorization. *Id.*
> There is no indication in the record whether the case was transferred to ALJ Newkirk by the HOCALJ. Likewise, there is no indication whether ALJ Newkirk is the HOCALJ signing on behalf of ALJ Sparks. Simply put, the record does not reveal whether the Commissioner complied with either scenario contemplated in HALLEX section I–2–8–40 when ALJ Newkirk signed the decision for ALJ Sparks. Thus, the Court cannot determine whether the Commissioner complied with section I–2–8–40 or not.
> However, even if the Commissioner did not comply with section I–2–8–40, HALLEX is not considered binding authority in the Sixth Circuit. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Consequently, even if

the Commissioner failed to follow HALLEX procedures, such a fact would not necessarily entitle the plaintiff to relief.

Other courts considering similar factual scenarios have required a showing of prejudice before affording relief. *See, e.g., Report and Recommendation entered in Pehrson v. Soc. Sec. Admin. Comm'r*, 2011 WL 2650187 at *2–3 (D. Maine July 6, 2011) *and adopted by the court* (affirming Commissioner's decision "[i]n the absence of some suggestion of actual prejudice" when the ALJ who presided at the hearing wrote the decision and a second ALJ signed the decision "for" the presiding ALJ). *Cf. Cohan v. Comm'r of Soc. Sec.*, 2011 WL 3319608 at *4–6 (M.D. Fla. July 29, 2011) (finding prejudice when ALJ who did not preside at the hearing signed the decision without "signing for" the presiding ALJ, and the decision was "inconsistent" and "specifically relied on observations of [p]laintiff's demeanor at the hearing" in making a credibility determination). In this case, the plaintiff has made no allegation of prejudice and none is apparent from the record. Consequently, he is not entitled to relief on this issue.[20]

In the present case, as in *Estep*, Plaintiff has neither alleged nor shown that he was prejudiced by the fact that a non-presiding ALJ signed the decision for the presiding ALJ. Accordingly, this argument is without merit.

However, the fact that the ALJ relied on and gave great weight to a consultative psychological examination report that was unsigned and unauthenticated is more troubling. Plaintiff complains of both Exhibits 5F (psychological consultative examination by Dr. Dennis Wilson) and 7F (residual functional capacity assessment by DDS physician). The Commissioner acknowledges that she does not have the electronic signature for Exhibit 7F but correctly notes that a supplemental transcript of Dr. Wilson's report has been filed.[21] Therefore, the Court finds no error in the ALJ's reliance on Dr. Wilson's report. However, the Court does find that it was error for the ALJ to rely on the unsigned and unauthenticated Exhibit 7F.[22]

---

[20] *Estep*, 2013 WL 212643 at *11–12 (M.D. Tenn. Jan. 18, 2013), *report and recommendation adopted sub nom. Estep v. Colvin*, 2013 WL 2255852 (M.D. Tenn. May 22, 2013) (some citations and footnotes omitted).

[21] (Comm's Br., p. 5 (citing R. 318 – 325) ECF No 14.)

[22] (R. 224 – 232.)  Not only is Exhibit 7F not signed, it does not contain the name of the examiner.

In making his residual functional capacity finding, the ALJ stated that he gave "great weight" to the opinions of the "State agency medical consultants."[23] The ALJ specifically cited Exhibit 7F in the assignment of "great weight" and reliance upon these opinions. The ALJ also cited Exhibit 7F in discrediting the opinion of John B. Woods, M.D, who opined that Plaintiff could perform light work only.[24]

The Commissioner acknowledges that her regulations require reports to be signed,[25] but argues that "current agency practices mean handwritten or 'wet' signatures will be fairly rare, at least on reports generated as a part of the agency's decision-making process."[26] The Commissioner's argument is misplaced. Plaintiff is not complaining that the report does not contain a handwritten or "wet" signature; instead, he complains that the report does not contain **any** signature or even the name of the preparer. Alternatively, the Commissioner argues that the omission was harmless error.

As discussed in *Cramer v. Astrue*, 2009 WL 2927286 (E.D. Tenn. 2009),

> Regardless of whether substantial evidence exists to support the Commissioner's decision, violation of the regulations merits a remand, absent a showing of harmless error. An elemental principle of administrative law is that agencies are bound to follow their own regulations. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

---

[23] (*Id.* at 18.)

[24] (*Id.* (citing Exhibit 4F, 194 – 202)). Dr. Woods also assessed Plaintiff with limitations to lifting and/or carrying twenty pounds occasionally or frequently and standing or walking only six hours total during an eight-hour workday because of increased bilateral leg and foot pain with tingling.

[25] *See* 20 C.F.R §§ 404.1519o; 416.919o; 404.1519n; 404.919n (2014) ( "We will not use an unsigned or improperly signed consultative examination report to make the determinations or decisions specified in paragraphs (b)(1), (b)(2), (b)(3), and (b)(4) of this section," which includes "Denial(s).") *See also* POMS DI 26510.089 ("Each medical assessment form must have a reviewing MC/PC's actual physical signature or an approved electronic signature.")

[26] (Comm's Br., p. 5, ECF No 14.)

541, 545 (6th Cir. 2004) (remanding claim for disability [when] Commissioner failed to comply with regulations requiring provision of good reasons for discounting a treating source's opinion). Whether a procedural error is "harmless" in this context does not depend on the likely outcome of the case but instead on whether the Commissioner violated a regulation establishing a procedural right designed to protect the claimant. *Wilson*, 378 F.3d at 546–47 (defining "substantial right").[27]

The *Cramer* Court noted that the regulations state that a consultative examiner must sign his report "[t]o help ensure that the appropriate medical consultant personally conducts the examination and reviews the report requested by the Commissioner."[28] Moreover, "[t]he regulations do not permit the adjudicator simply to ignore or omit an unsigned report: the adjudicator must either acquire a signature from the actual examiner or else order another consultative examination for the claimant."[29]

> Failure to follow the regulations requiring a consultative examiner's signature constitutes error requiring remand. These regulations are expressly designed to protect the claimant by having the medical consultant certify the results that are to become a part of the claimant's record. 20 C.F.R. §§ 404.1519n(e), 414.919n(e). By allowing the use of unsigned reports in favorable decisions but not in anything less, Sections 404.1519o and 414.919o imply that the signature requirement exists primarily to safeguard the claimant's rights. Thus, any use of an unsigned consultative examination report in an unfavorable decision is an error requiring a remand under the rule articulated in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004).[30]

This Court finds the reasoning of *Cramer* to be persuasive and holds that the ALJ's reliance on an unsigned and unauthenticated report was not harmless error and requires a reversal of the decision denying Plaintiff's applications.

---

[27] *Cramer*, 2009 WL 2927286 at *5.

[28] *Id.* (citing 20 C.F.R. §§ 404.1519n(e), 414.919n(e).)

[29] *Id.* at *6 (citing §§ 404.1519o(b), 414.919o(b); HALLEX I–2–5–20 (Sept. 28, 2005)).

[30] *Id. See also Posner v. Colvin*, 2014 WL 2895454 at *10 (E.D. Tenn. June 25, 2014) (agreeing with *Petty* that "any use of an unsigned consultative examination report in an unfavorable decision is an error requiring a remand").

Having determined that the decision must be reversed, the court must determine whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings. Therefore, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for another hearing consistent with this order.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 30, 2017.